UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

YOLANDA JONES,　　　　　　　　　　　　Case No. 1:14-cv-240
o/b/o T.Q.J.,
　　　Plaintiff,　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　　vs.

COMMISSIONER OF　　　　　　　　　　　　**REPORT AND**
SOCIAL SECURITY,　　　　　　　　　　　　**RECOMMENDATION**
　　　Defendant.

Yolanda Jones, on behalf of her child, T.Q.J. (plaintiff), brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI) childhood disability benefits. This matter is before the Court on plaintiff's Statement of Errors (Doc. 29) and the Commissioner's response in opposition (Doc. 36).

**I. Procedural Background**

Plaintiff was born in 2001 and was a school age child at the time the administrative law judge (ALJ) issued her decision. Plaintiff's mother, Yolanda Jones, filed an application for SSI childhood benefits on plaintiff's behalf in September 2009, alleging disability due to sleep apnea, a possible learning disability, and attention deficit hyperactivity disorder (ADHD). (Tr. 159, 215). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Kristen King. Plaintiff and plaintiff's mother appeared and testified at the ALJ hearing. On August 10, 2011, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

### A. Legal Framework for Children's SSI Disability Determinations

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.*; 20 C.F.R. § 416.202. An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential evaluation process for determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P, 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

If an impairment does not meet a listed impairment, disability may nonetheless be established if the child's impairment is medically or functionally equivalent to a listed impairment. A child's impairment is "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria" of a listed impairment. 20 C.F.R. § 416.926. In determining whether a child's impairment(s) functionally equals the listings, the adjudicator must assess the child's functioning in six domains:

2

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal an impairment in the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The relevant factors that will be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects. *Id.*

If the child's impairment meets, medically equals, or functionally equals an impairment in

the listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] was born [in] . . . 2001. Therefore, she was a school-age child on September 15, 2009, the date [the] application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since September 15, 2009, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: an attention deficit hyperactivity disorder, borderline intellectual functioning, and a learning disorder (20 CFR 416.924(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. [Plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. [Plaintiff] has not been disabled, as defined in the Social Security Act, since September 15, 2009, the date the application was filed (20 CFR 416.924(a)).

(Tr. 27-38).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

> 1. [Plaintiff] has a marked limitation in acquiring and using information. (Tr. 29-30).
>
> 2. [Plaintiff] has less than marked limitation in attending and completing tasks. (Tr. 31-33).

4

3. [Plaintiff] has less than marked limitation in interacting and relating to others. (Tr. 33-34).

4. [Plaintiff] has no limitation in moving about and manipulating objects. (Tr. 34-35).

5. [Plaintiff] has no limitation in the ability to care for herself. (Tr. 35-36).

6. [Plaintiff] has less than marked limitation in health and physical well-being. (Tr. 37-38).

C. **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

5

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 651 (6th Cir. 2009). *See also Wilson v. Comm'r. of Social Security,* 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff asserts one error on appeal: that the ALJ erred in finding that plaintiff did not meet or medically equal Listing 112.05C, D, or F. (Doc. 29 at 5-14). Additionally, plaintiff moves the Court to remand this matter under Sentence Six of 42 U.S.C. § 405(g) to allow the ALJ to consider additional medical evidence and school record records from 2013.[1] (*Id.* at 14-15).

1. Whether the ALJ erred in finding plaintiff did not meet or medically equal Listing 112.05.

Listing 112.05 provides in pertinent part:

**Intellectual disability**: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 59 or less;

or

D. A valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant limitation of function;

---

[1] The Court cannot consider the 2013 records in its substantial evidence review because they were not part of the record before the ALJ. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001).

6

or

. . . .

F.2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a,[2] and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05C, D, F.2.

The ALJ determined that plaintiff did not meet or medically equal Listing 112.05. The ALJ stated that "although [plaintiff] obtained a full scale IQ of 62 in testing on one occasion, the examiner noted that the score was an underestimate of the child's clinical presentation. Clinically, she functions in the borderline range intellectually and such is consistent with the child's Vineland Scores and other intelligence testing." (Tr. 28).

Plaintiff argues the ALJ erred in finding that her impairments did not meet or medically equal Listing 112.05C or D. Plaintiff maintains she meets Listing 112.05C because she achieved a verbal comprehension score of 53 and perceptual reasoning score of 59 on the Wechsler Intelligence Scale for Children (WISC-IV) [3] when tested in May 2008 by Dr. Berg,[4] the consultative examining psychologist. (Doc. 29 at 11). Plaintiff contends that these scores, as well as her WISC-IV full scale IQ score of 62, also support a finding that she meets Listing

---

[2] Listing 112.02 governs Organic Mental Disorders in children. The criterion of Listing 112.02B2a relates to "children (age 3 to attainment of age 18)" and requires a finding of a "[m]arked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02B2a.

[3] The verbal comprehension score on the WISC-IV is the functional equivalent of the verbal IQ on the WISC-III, and the perceptual reasoning score on the WISC-IV is the functional equivalent of the performance IQ on WISC-III. See *Fatheree v. Colvin*, No. 1:13-cv-01577, 2015 WL 1201669, at *10 (E.D. Cal. Mar. 16, 2015) (and cases cited therein). See also *Richardson v. Colvin*, No. 2:13-cv-101, 2014 WL 2507927, at *9 (E.D. Tenn. June 4, 2014).

[4] Dr. Berg examined plaintiff in connection with a previous application for SSI benefits. See Tr. 50.

112.05D because she has additional and significant functional limitations resulting from her severe ADHD and learning disorder impairments. (*Id.* at 11-12).

To satisfy the criteria of Listings 112.05C and 112.05D, plaintiff must produce evidence of valid qualifying IQ scores. Dr. Berg reported that although plaintiff's full scale IQ of 62 placed her in the mild range of mental retardation, clinically plaintiff "did not appear to function at that low a level." (Tr. 467). Rather, she "appeared to function in the borderline range of intelligence. . . ." (Tr. 466). Dr. Berg noted that plaintiff's "[m]emory processes appeared adequate with no impairment noted" and while she had problems with focus and concentration, this appeared to be a result of her ADHD. (Tr. 465). Dr. Berg further reported that plaintiff's Vineland scores "were in the borderline range which is further indication that [she] is not mentally retarded" (Tr. 466) and plaintiff's "general presentation suggested borderline level of intelligence." (Tr. 467). Dr. Berg concluded that plaintiff's performance on the WISC-IV was not an accurate estimate of plaintiff's intellectual capability. *See* Tr. 466-67.

In light of Dr. Berg's conclusion[5] that plaintiff's WISC-IV scores were an underestimate of her cognitive functioning, the ALJ implicitly determined that the scores were not valid for purposes of meeting Listing 112.05. The ALJ reasonably considered plaintiff's clinical presentation in conjunction with her IQ scores in determining whether her intellectual

---

[5]Plaintiff argues that Dr. Berg's assessment on the validity of the WISC-IV scores should not be given weight because his reports that plaintiff had "difficulties with focus and concentration" that "tended to reduce her scores" were not Dr. Berg's observations. Rather, they were the observations of the psychological trainee who administered the test. *See* Doc. 29 at 13, citing Tr. 462, 467, 501. Plaintiff's argument is not well-taken. The fact that Dr. Berg's aide administered the IQ test to plaintiff does not invalidate the doctor's finding that plaintiff's clinical functioning was in the borderline intelligence range. Dr. Berg in fact endorsed the assessment and there is nothing in the record to indicate that the aide's observations were not accurately reported to Dr. Berg which would justify calling into question Dr. Berg's conclusion. It is a common practice for doctors to rely upon the results of tests administered by their assistants and nurses in forming their medical opinions; therefore, it was not improper for Dr. Berg to rely on the reports of his aide in formulating his opinion.

functioning was at listing level severity:

> The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability . . . as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). In addition, Dr. Berg's conclusion and the ALJ's reliance thereon are supported by plaintiff's scores on the WASI administered by Dr. Froehlich in September 2009 showing a verbal IQ of 76, a performance IQ of 72, and full scale IQ of 72[6] as well as the opinion of non-examining state agency psychologist Dr. Matyi who opined that plaintiff did not meet or equal a listed impairment. *See* Tr. 537, 563. The ALJ reasonably evaluated the record as a whole and explained that plaintiff "was responding well to [the ADHD medication] Concerta" and "[h]er academic performance was improving," as demonstrated by April 2010 school records showing that plaintiff "was no longer failing in

---

[6] Notably, Social Security regulations indicate that the age of test results can affect whether those results provide an accurate assessment of the child's IQ. Listing 112.00D(10) explains:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above.

20 C.F.R. Part 404, Subpt P, App. 1, § 112.00(D)(10). The Social Security Administration's Program Operations Manual System (POMS) § DI 24515.055, provides that "[t]est results obtained at younger ages are less reliable and valid than test results obtained at older ages." POMS § DI 24515.055(A). The POMS state that IQ scores obtained at age 7 up to age 16 should be considered current for two years, while "[i]ntelligence test results obtained at age 16 or older may be assumed to apply to the subject's current status provided they are compatible with the individual's current behavior." POMS § DI 24515.055(D). Plaintiff's September 2009 scores are considered sufficiently current under the regulations. However, plaintiff's WISC-IV test results upon which plaintiff relies were obtained in May 2008, when plaintiff was 7 years old. (Tr. 462). Under the Social Security regulations, these scores were current for only two years or until May 23, 2010. The hearing on this matter was held on June 1, 2011, and the ALJ's decision was dated August 10, 2011, more than two years after plaintiff was tested. Consequently, the ALJ was correct in questioning the reliability of the scores.

school, but was earning C's" and a January 2011 treatment note by Dr. Froehlich that plaintiff "showed an overall improvement in attention since starting Concerta." (Tr. 28, citing Tr. 384-460, 560-62). The ALJ's finding that plaintiff does not satisfy Listings 112.05C or 112.05D for lack of valid, qualifying IQ scores is supported by substantial evidence. *See Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 462 (6th Cir. 2012) (an ALJ "may choose to disregard I.Q. scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation.") (citing *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 869, 872 (6th Cir. 2003)); *see also Hall ex rel. A.H. v. Comm'r of Soc. Sec.*, No. 4:13-cv-637, 2014 WL 2547791, at *6-7 (N.D. Ohio June 5, 2014) (the ALJ's conclusion that the claimant did not meet or medically equal Listing 112.05 for lack of valid IQ score was substantially supported by evidence, *inter alia*, that the claimant's grades improved since testing).

Plaintiff also contends the ALJ erred by not finding that she medically equals Listing 112.05 as follows:

> Assuming arguendo, that Dr. Berg's conclusion that '[o]n the IQ test [plaintiff] had difficulty with focus and concentration and this tended to reduce her scores' and that this phenomenon was due to her ADHD and [l]earning [d]isorder, it is submitted that postulating that the WISC-IV scores accurately measured her cognitive level in the 'mild mental retardation' category, then it is submitted that because the MMR scores were caused by other 'severe' impairments, that such findings would make [plaintiff's] status 'medically equivalent' to the Listings under 20 C.F.R. § 416.978.

(*Id.* at 12-13) (citations omitted). In essence, plaintiff argues that because her test results were adversely affected and caused by her ADHD and learning disorder, her cognitive impairment equals Listing 112.05. This argument ignores the evidence that with treatment of her ADHD with medication plaintiff's functioning and grades improved. The ALJ cannot ignore evidence

10

of the effectiveness of plaintiff's medication on her ADHD symptoms and the effect of treatment on plaintiff's functional limitations. *See* 20 C.F.R. § 416.930(a). Plaintiff bears the burden of proving that her impairments equal Listing 112.05. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Plaintiff has not put forth evidence showing her "impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan*, 493 U.S. at 531) (emphasis in the original). Therefore, plaintiff has not met her burden of establishing her cognitive impairment equals Listing 112.05.

There is substantial evidence supporting the ALJ's decision that plaintiff's intellectual functioning did not meet or equal the requisite criteria of Listings 12.05C and 12.05D. Therefore, plaintiff's first assignment of error should be overruled in this regard.

Plaintiff also contends she meets Listing 112.05F.2 because: (1) she satisfies the criteria of Listing 112.02B2a as she has a marked impairment in age-appropriate cognitive/ communicative function as evidenced by the ALJ's conclusion that plaintiff has a marked limitation in the domain of acquiring and using information; and (2) she has additional severe impairments of ADHD and a learning disorder. (Doc. 29 at 12). The Commissioner's brief response on this point is that plaintiff cannot establish that she had "the required deficits" because Dr. Berg did not indicate that plaintiff has the requisite "significant limitation of function" to meet the criteria of Listing 112.02B2a.

In assessing Listing 112.05F, the Commissioner "will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in § 416.924(c)." 20 C.F.R.

11

Pt. 404, Subpt. P, App. 1, § 112.00A. There is no dispute that plaintiff's ADHD and learning disorder are severe impairments (as found by the ALJ) and satisfy the listing's criteria of "a physical or other mental impairment imposing and additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05F.2. Thus, the only issue is whether the record establishes that plaintiff satisfies the criteria of Listing 112.02B2a. Based on the evidence of record and the ALJ's conclusions, it appears that plaintiff may satisfy the criteria such that remand is necessary.

The ALJ did not specifically discuss Listing 112.05F in her decision and her explanation on Listing 112.05 is limited to the validity of the WISC-IV scores. *See* Tr. 28. It appears, however, that the ALJ's finding that plaintiff has a marked limitation in the domain of acquiring and using information satisfies the criteria of Listing 112.02B2a, which requires that a claimant have a marked impairment in age-appropriate cognitive/communicative function. To satisfy the listing, plaintiff's marked impairment in age-appropriate cognitive/communicative function must be "documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02B2a. In determining that plaintiff has a marked limitation in the domain of acquiring and using information, the ALJ noted: (1) reports from plaintiff's mother regarding plaintiff's difficulties doing school work and understanding and following instructions; (2) plaintiff's repetition of two grades; (3) plaintiff's difficulty concentrating and understanding and following verbal directions on testing with Dr. Berg; (4) reports from plaintiff's second grade teacher showing plaintiff had very serious

problems in the various activities in the domain of acquiring and using information; (5) school reports showing that plaintiff did not retain information from day-to-day; and (6) the December IEP indicating that plaintiff's reading and writing were significantly below grade level. (Tr. 31). The ALJ further noted, however, that plaintiff appears to have improved greatly on medication and, consequently, her functioning in this domain is likely less than marked for the more recent period at issue. (*Id.*).

The ALJ never analyzed whether plaintiff's marked limitation in acquiring and using information met Listing 112.02B2a's criteria of a marked impairment in age-appropriate cognitive/communicative function though it appears, based on the above, that plaintiff meets the listing. Because the ALJ did not analyze this issue, this matter is incapable of judicial review and must be remanded for full evaluation of plaintiff's claim that she meets the criteria of Listing 112.05F.2. Accordingly, plaintiff's first assignment of error should be sustained in this respect and this matter should be remanded with instructions to the ALJ to assess whether plaintiff's marked limitation in the domain in acquiring and using information taken together with her severe ADHD and learning disorder meet or medically equal the criteria of Listing 112.05F.

2. <u>The newly presented evidence supports a remand under Sentence Six</u>.

Plaintiff seeks a remand under Sentence Six of 42 U.S.C. § 405(g) based on evidence presented to the Appeals Council. *See* Doc. 20 (Supplemental Certified Administrative Record). This new evidence consists of: (1) a January 2013 report from plaintiff's treating physician, Tanya Froehlich, M.D., wherein she diagnoses plaintiff with mild intellectual disability due to plaintiff's recent WISC-IV scores (full scale IQ score of 69; verbal comprehension score of 75; perceptual reasoning index score of 65) (Tr. 575-93); (2) October 2011 to January 2013

Children's Hospital treatment records which include notations regarding plaintiff's behavioral and adaptive functioning (Tr. 594-601); and (3) plaintiff's school records from August 23, 2011 to January 10, 2013. (Tr. 602-43).

The records submitted from Dr. Froehlich shows that plaintiff's intelligence testing scores are consistent with those obtained by Dr. Berg during his consultative examination. Plaintiff scored a full scale IQ score of 69 which Dr. Froehlich found indicates plaintiff has "cognitive abilities in the range of mild intellectual disability." (Tr. 575). Dr. Froehlich determined that plaintiff's performance on various academic assessments indicated plaintiff has "severely delayed academic abilities" as despite being almost 12 years old, plaintiff tested at the second grade level in reading, spelling, writing, and math skills; at the first grade level in story recall; and at the third grade level in academic knowledge. (*Id.*). Plaintiff was also found to have "severely delayed expressive language skills and severely delayed receptive language skills," with language skills falling between the six to nine year old levels. (Tr. 576). In addition, plaintiff tested in the bottom one to 9 percent (or lower) of the Woodcock Johnson Test of Achievement III (W-J III) in all areas. (Tr. 581). The January 2013 report card (Tr. 613) shows plaintiff received "Ds" and "Fs" in Reading, Writing, Math, Science, and Social Studies and her mother was notified that plaintiff was in danger of failing the school year. (Tr. 612-13).

New evidence may only be considered in determining whether to remand a matter under Sentence Six of 42 U.S.C. § 405(g). Sentence Six of 42 U.S.C. § 405(g) governs whether the Court is authorized to remand the matter for consideration of new and material evidence that was not available to the plaintiff at the time of the ALJ hearing. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)). To be

14

considered "material" within the meaning of § 405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision, and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986).

The Commissioner does not dispute that the post-hearing evidence is "new" or that plaintiff had good cause for not submitting it earlier, but contends the evidence is not material because plaintiff does not explain how the ALJ's ultimate conclusion would have been different had she considered this evidence. (Doc. 36 at 14-15). The Commissioner contends that although the new IQ scores would satisfy the criteria of Listing 112.05, the evidence does not relate to the period at issue (from January 2009, the alleged onset date, to August 2011, when the ALJ's decision was rendered). (*Id.* at 15). For the following reasons, the undersigned finds the supplemental evidence submitted by plaintiff is new and material and warrants remanding this matter under Sentence Six.

The 2013 testing evidence is relevant to plaintiff's condition prior to the ALJ's decision. Dr. Berg opined that plaintiff's 2008 full scale IQ score of 62, verbal comprehension score of 53, and perceptual reasoning score of 59 were not accurate estimates of plaintiff's intellectual capability given her performance on other tests and her general presentation at the consultative examination. (Tr. 466-67). In light of Dr. Berg's conclusion, the ALJ found that plaintiff did not meet or medically equal Listings 112.05C or 112.05D for lack of a qualifying IQ score. The additional evidence submitted by plaintiff shows she underwent additional and extensive testing in 2013 and achieved a full scale IQ of 69, which, like the 2008 full scale score of 62, indicates

15

plaintiff falls within the mild range of intellectual disability. The new evidence also shows that plaintiff has deficits in adaptive functioning that are consistent with an intellectual disability. This strongly suggests that if the ALJ had the benefit of the longitudinal evidence, including plaintiff's 2013 IQ scores and evidence of her deficits in adaptive functioning, the ALJ may have weighed Dr. Berg's opinion differently and concluded that plaintiff's 2008 IQ scores were not an underestimate of her cognitive functioning as Dr. Berg opined after his one-time examination.

In addition, there is a reasonable probability that the ALJ may have reached a different conclusion had she considered the new evidence from Dr. Froehlich and plaintiff's school. The ALJ determined plaintiff's mental impairment does not meet or medically equal Listing 112.05C based solely on the lack of a qualifying IQ score. *See* Tr. 28. Dr. Froehlich found plaintiff's performance on the 2013 IQ testing to be an accurate reflection of her cognitive functioning, which she opined placed plaintiff in the range of mild intellectual disability. (Tr. 575). Dr. Froehlich's opinion is further supported by plaintiff's documented severely delayed language skills, her performance on the W-J III, and her January 2013 report card showing that plaintiff was failing all of her academic courses. There is at least a reasonable probability that the ALJ may have reached a different conclusion on the issue of plaintiff's intellectual disability or functional equivalence to a listing had she been presented with this additional evidence. Moreover, the new evidence helps to establish a "longitudinal picture" of plaintiff's functioning and consideration of this evidence comports with the goal to "identify the child who cannot adequately function in primary school because of a mental impairment." 20 C.F.R. § 404, Subpt. P, App. 1, 112.00C3, 112.00D5.

For these reasons, the Court finds that plaintiff's additional evidence is both new and

material. A remand of this matter is therefore appropriate under sentence six of 42 U.S.C. § 405(g).

### III. This matter should be reversed and remanded for further proceedings.

This case involves both a Fourth Sentence and a Sixth Sentence remand under § 405(g). Under Sentence Four of § 405(g), the Court is authorized to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Here, a remand under Sentence Four is appropriate because "all of the essential factual issues have not yet been resolved." *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir. 1994); *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

In a Sentence Six remand, the Court does not rule on the correctness of the administrative decision as in a Sentence Four determination. *Faucher,* 17 F.3d at 174 (citing *Melkonyan v. Sullivan,* 501 U.S. 89 (1991)). Instead:

> [T]he court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based." 42 U.S.C. § 405(g).

*Melkonyan,* 501 U.S. at 98 (citations omitted). As discussed above, a Sixth Sentence remand is warranted to allow for consideration of the new evidence submitted by plaintiff and the impact on plaintiff's claim for disability.

Where a remand is warranted under both Sentence Four and Sentence Six, the Court may remand under both grounds. As explained by the Eleventh Circuit:

> To summarize, after reviewing § 405(g) and the applicable case law, . . . if both sentence-four and sentence-six grounds for remand exist in a disability case, the case may be remanded on both grounds. District court jurisdiction over the case

17

> continues after the entry of the remand judgment as a result of the sentence-six prong of the remand. If a claimant achieves a remand on both sentence-four and sentence-six grounds, and thereafter succeeds on remand in part due to the sentence-six ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed. In such a case, the claimant may wait until the post-remand judgment is entered before filing his EAJA application.

*Jackson v. Chater*, 99 F.3d 1086, 1097-98 (11th Cir. 1996). Other courts have likewise concluded that "dual basis" remands are appropriate in instances similar to the case at hand pursuant to both Sentence Four and Sentence Six. *See, e.g., Banik v. Comm'r of Soc. Sec.*, No. 1:11-cv-342, 2012 WL 2190816 (S.D. Ohio June 14, 2012), *adopted,* 2012 WL 2890890 (S.D. Ohio July 16, 2012); *Bradley v. Barnhart*, 463 F. Supp.2d 577, 583 (S.D. W.Va. 2006).

Accordingly, it is recommended that this matter be reversed and remanded for further proceedings consistent with this decision under Sentence Four of Section 405(g) and under Sentence Six of Section 405(g).

**IT IS THEREFORE RECOMMENDED THAT:**

1. The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g); and

2. This matter be **REMANDED** pursuant to Sentence Six of 42 U.S.C. § 405(g).

Date: 8/5/15

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

YOLANDA JONES,     Case No. 1:14-cv-240
o/b/o T.Q.J.,
    Plaintiff,     Barrett, J.
                   Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).